IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **DOLE CHILE S.A.** | : | CIVIL ACTION |
| | : | |
| Plaintiff, | : | |
| v. | : | |
| | : | |
| **MSC MEDITERRANEAN SHIPPING COMPANY, S.A., et al.** | : | NO. 2:23-cv-01504-MRP |
| | : | |
| Defendants. | : | |

Perez, J.                                                                                           March 29, 2024

**MEMORANDUM**

**I.      INTRODUCTION**

This is one of five nearly identical lawsuits brought by shippers of Chilean grapes seeking to recover for damages to various shipments of grapes. The shippers bring this suit and three others[1] against the ocean carriers and port terminals who were responsible for transporting, holding, storing, fumigating, and/or delivering the shipments. The fifth lawsuit was filed against only ocean carriers.[2] In response to the Amended Complaint, the port terminals filed nearly identical Motions to Dismiss. Because this Court will transfer this case pursuant to the foregoing analysis, it is unnecessary to address the merits of the Motion to Dismiss, which did not address venue.

---

[1] *Frutera Agrosan Export SPA v. MSC Mediterranean Shipping Co. S.A.*, No. 2:23-cv-00885-MRP; *C.H. Robinson Co., Inc. v. MSC Mediterranean Shipping Co. S.A.*, No. 2:23-cv-01384-MRP; *C.H. Robinson Co., Inc. v. MSC Mediterranean Shipping Co., S.A.*, No. 2:23-cv-01748-MRP.

[2] *Arcotrading, LTDA v. MSC Mediterranean Shipping Co., S.A.*, No. 2:23-cv-01218-MRP.

## II.  BACKGROUND

Plaintiff Dole Chile S.A.[3] filed this case on April 19, 2023 against Defendants MSC Mediterranean Shipping Company, S.A., Mediterranean Shipping Company (USA) Inc., MSC Ship Management Ltd. ("Carrier Defendants")[4] and Greenwich Terminals LLC, Gloucester Terminals LLC, Delaware Avenue Enterprises, Inc., Holt Cargo Systems LLC, and Holt Logistics Corp. (collectively, the "Terminal Defendants").[5] The Carrier Defendants are ocean carriers who were responsible for transporting the shipments from Chile to Philadelphia, Pennsylvania and Gloucester City, New Jersey. Amend. Compl. ¶¶ 31, 34-35. The Terminal Defendants "are stevedores, marine terminals, warehouse facilities, providers of fumigation services and/or facilitates, and/or logistics providers" who had possession of the grapes after discharge. *Id.* ¶ 29.

Plaintiff and the Carrier Defendants entered into a contractual agreement, known as a bills of lading or sea waybill, that covered the transport of the shipments. *Id.* ¶ 11, 31, 36, 56; ECF No. 22-1. The bills of lading contained the following relevant provisions:

Section 1 (Definitions)

> Subcontractor: includes but is not limited to . . . stevedores, terminals and groupage operators, road and rail transport operators, warehousemen and any independent contractors employed by the Carrier performing the carriage, and any direct or indirect Subcontractors, servants and agents thereof, whether in direct contractual privity or not.

Section 4 (Subcontracting and Indemnity)

> 4.2 The Merchant undertakes that no claim or allegation whether arising in contract, bailment, tort or otherwise shall be made against any servant, agent, or Subcontractor of the Carrier which imposes or attempts to impose upon any of them or any Vessel owned or chartered by any of them any liability whatsoever in connection with the Goods or the carriage of the Goods whether or not arising out

---

[3] Plaintiff resides in Vitacura, Chile. Amend. Compl. ¶ 1.
[4] The Carrier Defendants have principal places of business in New York, New York and Limassol, Cyprus. *Id.* ¶ 13.
[5] The Terminal Defendants have principal places of business in Philadelphia, Pennsylvania and Gloucester City, New Jersey. *Id.* ¶¶ 23-27.

> of negligence on the part of such Person. . . . Without prejudice to the foregoing, every such servant, agent and Subcontractor shall have the benefit of all terms and conditions of whatsoever nature contained herein or otherwise benefiting the Carrier under this Sea Waybill, as if such terms and conditions were expressly for their benefit. In entering into this contract, the Carrier, to the extent of such terms and conditions, does so on its own behalf and also as agent and trustee for such servants, agents and Subcontractors.

Section 10 (Notice of Claims, Time Bar and Jurisdiction)

> 10.3 Jurisdiction - It is hereby specifically agreed that any suit by the Merchant, and save as additionally provided below any suit by the Carrier, shall be filed exclusively in the High Court of London and English Law shall exclusively apply, unless the carriage contracted for hereunder was to or from the United States of America, in which case suit **shall be filed exclusively in the United States District Court, for the Southern District of New York and U.S. law shall exclusively apply.** The Merchant agrees that it shall not institute suit in any other court and agrees to be responsible for the reasonable legal expenses and costs of the Carrier in removing a suit filed in another forum. . . .

ECF No. 25-1 (emphasis added) (hereinafter, "Bills of Lading").

Plaintiff alleges that the Carrier and Terminal Defendants "failed to have in place adequate procedures and fumigation facilities to provide for the prompt fumigation of the cargo." *Id.* ¶ 47. As a result, the perishable grapes were damaged, and Plaintiff suffered loss. *Id.* ¶¶ 49-50.

**III.  DISCUSSION**

Under 28 U.S.C. §§ 1404(a) and 1406(a), district courts have broad discretion to direct the *sua sponte* transfer of a civil action to a different venue. *See also Danziger & De Llano, LLP v. Morgan Verkamp LLC*, 948 F.3d 124, 132 (3rd Cir. 2020); *Salovaara v. Jackson Nat. Life Ins. Co.*, 246 F.3d 289, 299 (3d Cir. 2001) ("We acknowledge that, as a general matter, it makes better sense, when venue is proper but the parties have agreed upon a not-unreasonable forum selection clause that points to another federal venue, to transfer rather than dismiss."). Accordingly, this Court will assess *sua sponte* whether, in light of the forum selection clause, this case should be transferred to the Southern District of New York.

**A.     The Forum Selection Clause is Enforceable**

First, we assess whether the forum selection clause is valid and enforceable. "Forum selection clauses are presumptively valid and should be enforced unless they are unreasonable under the circumstances. *Kilduff v. Jayco, Inc.*, No. 5:23-cv-00470, 2023 WL 3361187 at *3 (E.D. Pa. May 10, 2023). A forum selection clause is unreasonable if "(1) it is the result of fraud or overreaching; (2) . . . enforcement would violate strong public policy of the forum; or (3) . . . enforcement would result in jurisdiction so seriously inconvenient as to be unreasonable." *Id.* (quoting *Polytek Dev. Corp. v. 'Doc' Johnson Enters.*, 532 F. Supp. 3d 243, 248 (E.D. Pa. 2021)). "[M]ere inconvenience and additional expense" are insufficient to demonstrate the third factor. *Id.*

None of the criteria necessary to invalidate the forum selection clause are present here. There is no evidence of fraud or overreach, and enforcement in the Southern District of New York would not be so seriously inconvenient as to be unreasonable. Indeed, most of the Carrier Defendants reside in New York. Amend. Compl. ¶ 17. In addition, "it would be consistent with the public policy of Pennsylvania to enforce the forum selection clause in order to give force to the parties' agreement." *Kilduff*, 2023 WL 3361187 at *3 (quoting *Feldman v. Google, Inc.*, 513 F. Supp. 2d 229, 247 (E.D. Pa. 2007)). This Court will therefore proceed with the transfer analysis.

### B.     Transfer Standard

Section 1404(a) provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. §1404(a). A court contemplating a transfer typically conducts a balancing test, weighing "the private and public interests protected by the language of § 1404(a)." *Maguire Ins. Agency, Inc. v. Amynta Agency, Inc.*, No. 21-4664, 2021 WL 5987318 at *3 (E.D. Pa. Dec. 17, 2021) (quoting *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995)).

Private interests to consider include: "plaintiff's forum preference as manifested in the original choice; the defendant's preference; whether the claim arose elsewhere; the convenience of the parties as indicated by their relative physical and financial condition; the convenience of the witnesses—but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and the location of the books and records (similarly limited to the extent that the files could not be produced in the alternative forum)." *Jumara*, 55 F.3d at 879. Public interests to consider include: "the enforceability of the judgment; practical considerations that could make the trial easy, expeditious, or inexpensive; the relative administrative difficulty . . . resulting from court congestion; the local interest in deciding local controversies at home; the public policies of the fora; and the familiarity of the trial judge with the applicable state law in diversity cases." *Id.* at 879-80.

The presence of a mandatory forum selection clause, however, shifts the analysis. A forum selection clause is considered mandatory when it "contains exclusive or obligatory language." *Maguire*, 2021 WL 5987318 at *4; *see, e.g., Mato v. Window World, Inc.,* No. CIV.A. 10-7617, 2011 WL 710473, at *4 (E.D. Pa. Feb. 28, 2011) (finding that a forum-selection clause stating that a court "shall have jurisdiction" was mandatory). When a mandatory forum selection clause is at play, only the public interests are considered. *Id.* at *4-5. Contrarily, "[w]here the contract containing the mandatory forum-selection clause was not signed by all defendants, . . . the private and public interests of the non-signatory parties must be considered as in a traditional § 1404(a) analysis." *Id.* at *5. Thus, "if the forum-selection analysis (applied to signatory parties) and the traditional § 1404(a) analysis (applied to non-signatory parties) 'point to the same forum, the court should allow the case to proceed in that forum . . . and the transfer inquiry ends there.'" *Id.* (quoting *In re Howmedica Osteonics Corp.*, 867 F.3d 390, 404 (3d Cir. 2017)).

C.     **Transfer Analysis**

The bills of lading's forum selection clause unambiguously states that if "the carriage contracted for hereunder was to or from the United States of America, . . . suit **shall** be filed exclusively in the United States District Court, for the Southern District of New York and U.S. law shall exclusively apply." Bills of Lading, Section 10.3 (emphasis added). On its face, the clause mandates that lawsuits involving journeys to and from the United States be filed in the Southern District of New York. The clause is therefore mandatory in nature.

The transfer analysis for the Carrier Defendants, as signatories to the bills of lading, requires only consideration of the public interests. Typically, "a controlling forum selection clause is enforced in all but the most 'unusual cases' where public interest factors have particularly significant weight." *Maguire*, 2021 WL 5987318 at *7. This case is far from unusual. There is no indication that the enforceability of a judgment would be more difficult if the cases were transferred to the bargained-for jurisdiction. There is likewise no suggestion that transferring the cases would lead to any administrative difficulties. The alleged culpable conduct occurred in Philadelphia and New Jersey, and only some of the Terminal Defendants are Pennsylvania residents. Amend. Compl. ¶¶ 8, 23-27. In fact, the Carrier Defendants are New York and Cyprus residents, and the Plaintiff is a resident of Chile. *Id.* ¶¶ 1, 13. Because the public interest factors are neutral, transfer of the claims against the Carrier Defendants is proper under Section 1404(a).

The same public interest considerations apply to the analysis for the Terminal Defendants. However, the Terminal Defendants' non-signatory status require us to consider the private interests as well. The forum selection clause indicates that the Southern District of New York is Plaintiff's choice of forum, but Plaintiff filed this action in the Eastern District of Pennsylvania. This discrepancy suggests the first factor, the plaintiff's choice of forum, is neutral. In their respective

Answer and Motion to Dismiss, neither set of Defendants challenged venue. Thus, the second factor, the defendant's choice of forum, is also neutral. Because the claims arose in Pennsylvania and New Jersey, and the parties reside in Pennsylvania, New Jersey, New York, Cyprus, and Chile, the third factor is neutral as well. Lastly, there is no indication that witnesses, or books and records would be unavailable if this case were to proceed in the Southern District of New York. Where the forum selection clause and the traditional Section 1404(a) analysis "point to the same forum, . . . the court should allow the case to proceed in that forum, . . . and the transfer inquiry ends there." *In re Howmedica*, 867 F.3d at 404. Thus, under Section 1404(a), the claims against the Terminal Defendants may be transferred as well.

Even further, the bills of lading's Himalaya Clause extends the forum selection clause to the Terminal Defendants.[6] The Himalaya Clause extends the terms and conditions, including the forum selection clause, to "every such servant, agent and Subcontractor . . . ." Bills of Lading, Section 4.2. It also provides: "In entering into this contract, the Carrier, to the extent of such terms and conditions, does so on its own behalf and also as agent and trustee for such servants, agents and Subcontractors." *Id.* The bills of lading define "Carrier" as "MSC Mediterranean Shipping Company S.A." Bills of Lading, Section 1. The definition of "Subcontractor" includes "stevedores, terminals and groupage operators, road and rail transport operators, warehousemen and any independent contractors employed by the Carrier performing the carriage, and any direct or indirect Subcontractors, servants, and agents thereof, whether in direct contractual privity or not." *Id.*

---

[6] A Himalaya Clause "extends the bills' defenses and limitations on liability to parties that sign subcontracts to perform services contemplated by the bills." *Kawasaki Kisen Kaisha Ltd. v. Regal-Beloit Corp.*, 561 U.S. 89, 94 (2010).

In their Amended Complaint, Plaintiffs identify the Terminal Defendants as "stevedores, marine terminals, warehouse facilities, providers of fumigation services and/or facilities, and/or logistics providers who discharged the Subject Shipments in the Port of Philadelphia, . . . ." Amend. Compl. ¶ 29. The Amended Complaint continues: "For some cargo, the transportation from Packer Avenue to Gloucester Marine Terminal was required by the bills of lading and performed by the Carrier Defendants, or on their behalf by the Terminal Defendants." *Id.* ¶ 36. Thus, under the clear and unambiguous terms of the bills of lading, the Terminal Defendants are subcontractors to whom the forum selection clause extends. *See Kawasaki Kisen Kaisha Ltd. v. Regal-Beloit Corp.*, 561 U.S. 89, 95 (2010) (acknowledging that a forum selection clause applied to downstream entities due to a Himalaya Clause in the bills of lading); *compare Norfolk Southern Railway Co. v. Kirby*, 543 U.S. 14, 31-32 (2004) (holding that a Himalaya Clause extended to downstream entities where it applied to "*any* servant, agent or other person (including *any* independent contractor)" (emphasis in original)), *with* Bills of lading, Section 4.2 (extending liability limitation to "*any* servant, agent, or Subcontractor of the Carrier" (emphasis added)). The bills of lading further support transfer of this case.

## IV.   CONCLUSION

For the foregoing reasons, this Court will transfer this case to the United States District Court for the Southern District of New York. An appropriate order follows.